141 So. 689

**BIRMINGHAM NEWS CO. v. MOSELEY et al.**

**8 Div. 382.**

Supreme Court of Alabama.

March 17, 1932.

Rehearing Denied May 26, 1932.

R. DuPont Thompson and Walter S. Smith, both of Birmingham, for appellant.

O. Kyle and S. H. Lynne, both of Decatur, for appellees.

KNIGHT, J.

Suit by the Birmingham News Company against William Moseley, J. H. Pride, and J. W. Bailey, instituted in the circuit court of Morgan county; and, from a judgment in favor of the defendants Moseley and Pride, the present appeal is prosecuted.

Plaintiff amended his complaint by striking out J. W. Bailey as a party defendant, and thereupon the defendants Moseley and Pride demurred to count 1 of the complaint as amended. This demurrer was sustained by the court, and the plaintiff further amended his complaint by adding thereto count A. To count A, the defendants also demurred, and the court sustained the demurrer. Count 1, as amended, and count A were further amended by the plaintiff, and to these two counts as last amended the defendants demurred, but their demurrer was overruled by the court.

The contract sued on, and which is set out at length in the complaint, shows that J. W. Bailey, who had been appointed appellant's agent, in the town of Decatur (Albany Station), was intended to be the principal obligor in the contract, and that the defendants Moseley and Pride were the sureties of said principal obligor. This fact appears in the body of the contract, and the fact that it was incomplete without the signature of said J. W. Bailey is apparent from the whole instrument. The demurrer aptly raises this question.

In the absence of any averment in the complaint showing that the sureties delivered the contract, in its incomplete state, intending to be bound thereby, without the signature of the principal obligor, is the obligation binding upon them as sureties?

In the case of City and County of Sacramento v. Dunlap, 14 Cal. 421, the court, speaking through Justice Field, said: "The liability of the sureties is conditional to that of the principal. They are bound if he is bound, and not otherwise. The very nature of the contract implies this. The fact that their signatures were placed to the instrument can make no difference in its effect. It purports on its face to be the bond of the three. Some one must have written his signature first, but it is to be presumed, upon the understanding, that the others named as obligors, would add theirs. Not having done so; it was incomplete and without binding obligation upon either."

In the case of Russell v. Annable, 109 Mass. 72, 12 Am. Rep. 665, it was held that "sureties on a bond are not holden, if the instrument is not executed by the person whose name is stated as the principal therein. It should be executed by all the intended parties. Bean v. Parker, 17 Mass. 591; Wood v. Washburn, 2 Pick. 24."

In the following cases it is held that an official bond, or a bond required by statute, not signed by the principal, when purporting to be executed by him, is prima facie invalid as to the sureties. Bunn v. Jetmore, 70 Mo. 228, 35 Am. Rep. 425; City and County of Sacramento v. Dunlap, 14 Cal. 421; Johnston v. Kimball Township, 39 Mich. 187, 33 Am. Rep. 372; Wood v. Washburn, supra; Russell v. Annable, 109 Mass. 72, 12 Am. Rep. 665; Goodyear, etc., Co. v. Bacon, 151 Mass. 460, 24 N. E. 404, 8 L. R. A. 486; Green v. Kindy, 43 Mich. 279, 5 N. W. 297; Ferry v. Burchard, 21 Conn. 597; Curtis v. Moss, 2 Rob. (La.) 367; State v. Austin, 35 Minn. 51, 26 N. W. 906; Board of Ed. v. Sweeney, 1 S. D. 642, 48 N. W. 302, 36 Am. St. Rep. 767; Martin v. Hornsby, 55 Minn. 187, 56 N. W. 751, 43 Am. St. Rep. 487.

The case of Painter v. Mauldin, 119 Ala. 88, 24 So. 769, 72 Am. St. Rep. 902, throws much light upon the question now under consideration. In that case the question arose as to the liability of sureties on the bond of a guardian, against whom a judgment had been rendered. The sureties moved to quash the execution issued against them on the ground that, while they signed the bond of the guardian, the guardian himself, though named in the body of the bond, did not sign it, and that it was delivered without the consent of the sureties. The court held that, if the bond was not executed by the principal, as was admitted, it was not a statutory bond, and did not authorize the issuance of an execution against the sureties as provided by the statute. The court concluded: "We hold, however, that under the admitted facts, by virtue of section 2282 of the Code of 1896, the bond is good as a common-law liability, upon which the obligors may be sued in a court of law." Section 2282 referred to reads: "A surety on the bond of the general guardian of the county, or on the bond of the guardian of a minor, or person of unsound mind, cannot avoid liability thereon, on the ground that he signed or delivered it on condition that it should not be delivered to the judge of probate, or should not become perfect, unless it was executed by some other person who does not execute it."

Thus it would seem that but for section 2282 of the Code of 1896 (now Code 1923, § 8145) the bond would have been held void, and unenforceable.

The Painter Case, supra, again came under consideration of this court in the more recent case of Hannis Distilling Co. v. Lanning et

al., 191 Ala. 280, 68 So. 137, 139, and, in line with the holding in the Painter Case, it is held: "By force of the statute complainants are denied the right to avoid liability on the ground that they signed or delivered the bond on condition that it should not be delivered to the proper officer, or should not become perfect, unless it was executed by some other person who did not execute it; the bond being on its face a valid and perfect instrument. The manifest purpose and intention of the statute (section 1505 of the Code [of 1907]) is to take away from sureties who sign any bond within the scope and operation of the statute the defense that they executed and delivered the bond conditionally; and the statute is to be liberally construed. Bromberg v. Fidelity & Deposit Co., 139 Ala. 345, 36 So. 622. The bond having been executed and delivered as a bond in valid form under the statute, carrying upon its face no evidence of conditional execution or delivery, complainants are concluded by the judgment."

■ By a long line of authorities it has been held that, when a surety on a bond, such as the one here involved, has signed on the condition that the principal, whose name appears as obligor in the body of the bond, shall also sign before the delivery of the instrument, and it is delivered by the principal, or one acting for him in violation of the condition without his signature, the surety is not bound, if the obligee has actual or constructive notice of the condition. Wild-Cat Branch v. Ball, 45 Ind. 213, 218; Allen v. Marney, 65 Ind. 398, 32 Am. Rep. 73; Ney v. Orr, 2 Mont. 559; Cutler v. Roberts, 7 Neb. 4, 29 Am. Rep. 371; Guild v. Thomas, 54 Ala. 414, 25 Am. Rep. 703; Hall v. Parker, 37 Mich. 590, 26 Am. Rep. 540; Gay v. Murphy, 134 Mo. 98, 34 S. W. 1091, 56 Am. St. Rep. 496; Goodyear Dental, etc., Co. v. Bacon, 151 Mass. 460, 24 N. E. 404, 8 L. R. A. 486; Bowditch v. Harmon, 183 Mass. 290, 67 N. E. 333; Novak v. Pitlick, 120 Iowa, 286, 94 N. W. 916, 98 Am. St. Rep. 360; Baker County v. Huntington, 46 Or. 275, 79 P. 187; 32 Cyc. 45.

In 50 Corpus Juris, § 63, the principle is broadly stated, that "the fact that an instrument which purports on its face to be the bond of two or more obligors is delivered to the obligee without being executed by all the persons named in the body thereof as obligors imputes notice to the obligee that the surety signing it did so on the condition that it was to be executed by all parties named, either as principals or cosureties, before delivery, and puts him on inquiry as to whether those who signed consented to its being delivered without the signatures of the others."

But the same authority, on page 41, § 64, states the principle thus: "As to whether there is a presumption that an instrument is incomplete and unfinished until it is executed by all the parties whose names appear, the authorities are not in harmony. By the weight of authority no presumption arises that a bond is not to be considered binding upon a surety who signs until executed by all the obligors named in the body thereof, but its execution is deemed prima facie complete, and it is for those who executed it to show that they were not bound unless it was executed by the others, especially where the bond is a joint and several one." As supporting this statement of the author, the following cases are cited: People v. Stacy, 74 Cal. 373, 16 P. 192; City of Los Angeles v. Mellus, 59 Cal. 444; Towns v. Kellett, 11 Ga. 286; Johnson v. Weatherwax, 9 Kan. 75; Stevens v. Wallace, 5 T. B. Mon. (Ky.) 404; Cutter v. Whittemore, 10 Mass. 442; Reed v. McGregor, 62 Minn. 94, 64 N. W. 88; State v. Sandusky, 46 Mo. 377; Mullen v. Morris, 43 Neb. 596, 62 N. W. 74; Parker v. Bradley, 2 Hill (N. Y.) 584; Crudup v. Okla. Portland Cement Co., 56 Okl. 786, 156 P. 899, 902; Ward v. Churn, 18 Grat. (59 Va.) 801, 98 Am. Dec. 749; Eng. Coyte v. Elphick, 22 Wkly. Rep. 541; Sidney Road Co. v. Holmes, 16 U. C. Q. B. 268.

■ Upon due consideration of the foregoing authorities, we hold that a bond executed by the sureties alone, the principal not signing, though mentioned in the body of the instrument as one of the obligors, may be such an instrument as will be binding on the sureties, until by proper plea and proof the sureties show that its delivery was made in violation of the condition that it was not to be delivered until executed by all the parties named, either as principals or sureties. When such an instrument is made the basis of a suit against the sureties, coupled with the averment that it was made by the sureties, the burden of averment and proof is thereby cast upon the sureties to aver by proper plea, and prove that the contract was delivered in violation of the condition that the bond was not to be delivered until signed by all the obligors named therein.

■ While the bond set up in counts A and 1, as first amended, was not signed by the principal J. W. Bailey, each of said counts avers that the same was made by the said sureties, and this was sufficient to satisfy the rule of law, and to require the defendants Moseley and Pride to meet the averments of these counts by proper plea, if they would escape liability upon the ground that the bond was signed conditioned upon its execution by Bailey.

Counts A and 1, as first amended, were not subject to demurrer, and the court committed error in sustaining defendants' demurrer thereto.

The plaintiff thereupon further amended count 1, as last amended, and also amended count A. To count 1, as last amended, and

**50**

to count A, as amended, the defendants again demurred, but their demurrers were by the court overruled. The defendants then filed pleas from 1 to 7, inclusive. The court sustained plaintiff's demurrers to pleas 4, 5, 6, and 7, but overruled the demurrer to pleas 2 and 3, and later charged out plea 3. The plaintiff then filed replications numbered 2, 3, and 4. There was demurrer to each of said replications, and the same was sustained by the court to replications 2 and 3, and to 4 as addressed to plea 2, and overruled as addressed to plea 3. There was no error in the ruling of the court.

■ We hold plea 2 presented a valid defense to the cause of action stated in count A, as amended, and to count 1, as last amended. McConnon & Co. v. Kirby, 211 Ala. 440, 100 So. 764; White Sewing Mach. Co. v. Saxon, 121 Ala. 399, 25 So. 784; Sharp v. Allgood, 100 Ala. 183, 14 So. 16; Evans v. Daughtry, 84 Ala. 68, 4 So. 592; King v. State, 81 Ala. 92, 8 So. 159; Marks v. First Nat. Bank, 79 Ala. 550, 58 Am. Rep. 620; Guild v. Thomas, 54 Ala. 414, 25 Am. Rep. 703; Firemen's Ins. Co. v. McMillan, 29 Ala. 147; Robertson v. Coker, 11 Ala. 466; Bibb v. Reid, 3 Ala. 88.

■■ Defendants' demurrers to replications 2 and 3 were properly sustained by the court. Replication 2, while in effect confesses plea 2, does not set up any matters in avoidance thereof. And replication 3 was bad in that it fails to aver that the defendants, at the time it is alleged they promised to pay plaintiffs the amount due under the bond, knew that the bond had been delivered without the signature of the said J. W. Bailey, the principal therein.

In the case of Slaughter v. Hampton, 90 S. W. 981, 982, 28 Ky. Law Rep. 904, it is held that: "The fact that a surety, who was not liable on the bond because of the absence of the signatures of the co-sureties, tried to borrow money to pay the bond or a part of it, thereby acknowledging his liability thereon, did not validate the bond and make him liable thereon."

■ Replication 4 was no answer to plea 2, in that it set up no matters in avoidance of said plea 2, while in effect admitting the facts averred therein to be true. The court charged out plea 3, and therefore the sufficiency of replication 4 as addressed to plea 3 need not be considered. The plaintiff withdrew counts 2, 3, 4, 5, and 6, which in form were common counts.

■ The plaintiff, on the trial, offered in evidence what is termed "Report of Bondsmen," which is nothing more nor less than a statement made out by plaintiff's agent, E. M. Mitcham, who acted for the plaintiff in taking the contract. This statement was admissible for no purpose in this case, and the court properly refused to allow plaintiff to introduce it in evidence. Certainly defendants could not be prejudiced, nor bound by any statements made by plaintiff's agent Mitcham to plaintiff, with reference to said bond, whether said statement was in writing · or not.

■ It is insisted for error that the court should have allowed this question propounded by plaintiff to its witness Oliver: "I will ask you if at any time after this account matured, if Mr. Bailey ever disputed the correctness of that account in any way?" The court held that the question was too general and refused to allow it to be answered. Whether there was error or not in this ruling, it was cured, as the witness immediately thereafter was · permitted to, and did, testify that Mr. Bailey "never at any time objected to the correctness of the account, or disputed the correctness of the account."

Some time before the trial of the cause, the plaintiff gave written notice to defendants to produce a certain letter written on October 8, 1929, by plaintiff's agent Oliver to J. W. Bailey calling upon Bailey to settle his account with plaintiff, and at the same time gave written notice to the defendants Moseley and Pride to produce at the trial letters from plaintiff to them under date of October 21st, calling their attention to the account due by Bailey to the plaintiff; and calling upon Moseley and Pride as bondsmen of Bailey to co-operate with it in getting the account settled. The said Moseley and Pride did not produce the letters. The plaintiff, after properly identifying copies of the said letters written to Moseley and Pride by W. O. Oliver, manager of the plaintiff's credit department, under date of October 21, 1929, offered the same in evidence as Plaintiff's Exhibit 5. At first, the court permitted the introduction of the letters in evidence, but later, after defendants had cross-examined Mr. Oliver with reference to the mailing of the letters, the court, on motion of defendants, excluded the letters (Exhibit 5). To this ruling of the court plaintiff duly excepted. With reference to the mailing of this letter to Messrs. Moseley and Pride, Mr. Oliver, the plaintiff's credit manager, after testifying that he had written the letter, further testified: "That letter did not lay on my desk after that. · Each department has a mailing box there in its own department, an office box, and it is collected in the department and corralled in what is known as the mailing department and stamped and counted out there and put in a United States mail sack and carried to the post office. We don't put it in the mail box. We have a mailing department there and they go and collect the mail in the various departments and put them in a bag and carry them to the United States post office. The letters are stamped there in the Birmingham News building on the balcony just off the first floor. It is just above my office, but not in my office,

and I didn't see them stamped. That office on the balcony is not in my office, it is just above my head and is not in the same room. My testimony with reference to plaintiff's exhibit 5 is the same as to plaintiff's exhibit 4. I did not personally see it stamped, but it was my general knowledge. I did not see it mailed personally."

This court has never been called on, so far as we are advised, to pass upon this identical question.

It appears that the letters of which Exhibits 4 and 5 are copies were written, dictated, by plaintiff's agent Oliver, and signed by him, and the copies preserved, and that these letters, properly addressed to defendants, were removed from his desk for mailing, in the customary and usual way of handling the mails in the plaintiff's business, but the employee whose duty it was to mail the letters was not examined as a witness in the cause.

. Each of the defendants denied receiving the letters. Was the evidence offered by the plaintiff sufficient to justify the court in admitting copies of the letters in evidence? In the case of Federal Asbestos Co. v. O. P. Zimmermann, 171 Wis. 594, 177 N. W. 881, 25 A. L. R. 5, it is said: "Mere proof of. dictation or writing of a letter, coupled with evidence of an office custom with reference to mailing of letters, is not sufficient, where its receipt is denied, to justify admission in evidence of a carbon copy upon failure of the addressee to produce the letter in response to notice."

In the case of Elmore v. Busseno, 175 App. Div. 233, 161 N. Y. S. 533, it was held that the mere fact that a letter confirming a sale was written, and an envelope prepared, and such letter given to the seller's manager, and signed by him, and handed to an office boy required to put each letter in its proper envelope, and seal, stamp, and mail it, is not sufficient evidence of the mailing of the letter, where its receipt by the buyer was denied.

In the case of Brailsford v. Williams, 15 Md. 150, 74 Am. Dec. 559, the court said: "We think, however, that the evidence offered for the purpose of showing that the letter had been mailed, was not legally sufficient. The fact was to be found by the jury from the custom prevailing in the countingroom of the writer; but compliance with the custom had not been fully proved. The person whose duty it was to deposit letters in the postoffice should have been called, or his absence accounted for."

In the case of Gardam & Son v. Batterson, 198 N. Y. 175, 91 N. E. 371, 373, 139 Am. St. Rep. 806, 19 Ann. Cas. 649, it is said: "It was essential, in this case, to the admissibility of the copies; that the testimony of the defendant as to the sending of the letters should have been supplemented by the further evi-

dence of the clerk, or other. employee, whose duty it was to post letters, that in the regular course of business he had invariably collected the letters upon the defendant's desk and had posted them. However strong the convictions and the statements of the defendant as to the usual mailing of the letters placed on his desk, there was the gap in the proof, created by the failure to show that regular practice, or custom, of carrying them to the post, by some one charged with that duty, from which a presumption would naturally arise of these letters having been posted." To the same effect is the holding in the case of Goucher v. Carthage Novelty Co., 116 Mo. App. 99, 91 S. W. 447.

The prevailing rule seems to require that, where the evidence of a business custom, with respect to the mailing of letters, is relied on to show mailing, this evidence must be coupled up with the testimony of the person whose duty it is actually to carry out the custom, of his compliance therewith, and, when this is done, it is sufficient to establish the fact of mailing. We adopt this rule as sound and proper to meet the necessities of present business life. Authorities supra.

We are therefore at the conclusion that the court committed no error in excluding Plaintiff's Exhibits 4 and 5 (the letters to Moseley and Pride and J. W. Bailey) from the evidence in the cause. Under the evidence of the witness Oliver the exhibits were not admissible.

There was no merit in the plaintiff's objections to the witness Bailey, viz.: "Was that account correct?" It called for a shorthand statement of facts. Nor was there any merit in the objection of plaintiff to the following question propounded to the witness Bailey by the defendants: "Did the Birmingham News Company forward you more papers each week and charge you for the papers, than you ordered from them?"

Objections were made by plaintiff to the evidence of the witnesses, going to show that, when the bond was signed by the sureties, each asked who was also to sign the bond, and that the bond was not to be delivered until the said Bailey was to sign it. This evidence was competent testimony under defendants' plea 2, which we have held to present a defense to the action. Authorities, supra.

Of course, there is no merit in the insistence that the court erred in sustaining defendants' objection to the question: "Look at it and tell the jury whether or not there is a line on that paper for you to sign?" The paper had already been introduced in evidence, and the jury could see whether or not there was such a line on the paper. Nor was there any error in sustaining defendants' objection to the following question propound-

**52**

ed to the witness Bailey: "Well, you tell the jury whether or not he did sign it on that day or did not sign it on the day he signed the agreement?" This witness had stated in reply to questions previously asked witness by plaintiff's attorney, that Mitcham's name was not on the paper, as a witness, the day the same was signed, that he might have signed it afterwards. The other rulings of the court, on admission and exclusion of evidence, which have been argued by appellant, have been considered by us, and we find that the rulings of the court in respect thereto are free from error.

The plaintiff was not due to have the jury instructed in the terms of its refused charges 8, 9, 10, 13, 14, 15, 18, 19, 21, 23, and 24. These charges pretermitted all consideration of that phase of the case presented by plea 2. Charges 25, 26, and 27 were palpably bad (1) in assuming that the bond was one of absolute guaranty, and (2) in pretermitting all reference to the defense set up in plea 2.

For the single error in sustaining defendants', demurrer to counts A and 1, as first amended, the judgment of the circuit court is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and BROWN and FOSTER, JJ., concur.